UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:15CV-00073-HBB

**DEBORAH KUMAR**                                               **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

The Commissioner of Social Security denied Deborah Kumar's applications for disability insurance benefits and supplemental security income benefits. Kumar seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Both Kumar (DN 16-1) and the Commissioner (DN 21) have filed a Fact and Law Summary. Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14).

### FINDINGS OF FACT

Deborah Kumar is 48-years-old and lives alone in Owensboro, Kentucky (Tr. 35-36). Occasionally, Kumar's 19-year-old daughter stays with her to assist with cleaning, driving, and

personal care (Tr. 36). Kumar completed the ninth grade and earned her GED in 2007 (Tr. 37). From 2006-2011, Kumar ran the deli and the register at a Shell station, however, she left this job because she was missing a lot of work and couldn't handle the standing and walking requirements of the job (Tr. 38). Kumar began using a walker in 2012 because she was falling and having trouble walking (Tr. 43).

Kumar applied for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI, claiming that she became disabled on December 28, 2011, as a result of her weight, asthma, swelling feet and legs, back condition, high blood pressure, thyroid problems, and anemia (Tr. 259, 261, 381). Her applications were denied initially and again on reconsideration (Tr. 75, 87, 99, 112). Administrative Law Judge Jerry Faust ("ALJ") conducted a video hearing in St. Louis, Missouri, on October 22, 2013 (Tr. 30). Kumar attended the video hearing from Owensboro, Kentucky, with her attorney, Leigh Doyal (Tr. 32). Lowell Latto, Ed.D., an impartial vocational expert also appeared at the hearing (Tr. 10). The ALJ issued an unfavorable decision on December 20, 2013 (Tr. 23).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Kumar has not engaged in substantial gainful activity since her alleged onset date (Tr. 12). Second, Kumar has the severe impairments of: "degenerative disc disease of the lumbar spine; diabetes mellitus; morbid obesity; borderline intellectual functioning; and depression" (Id.). Third, none of Kumar's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 13). Fourth, Kumar has the residual functional capacity ("RFC") to:

2

> lift and carry 10 pounds occasionally, to sit, with normal breaks, for a total of six of eight hours and to stand and walk, with normal breaks for a total of eight hours. The claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant should avoid concentrated exposure to extreme cold, extreme heat, wetness and extreme humidity. The claimant should avoid concentrated exposure to hazards. The claimant can perform simple, routine tasks in a relatively static environment with infrequent changes. The claimant can have occasional and superficial (no negotiation, no confrontation, no arbitration, no mediation, and no supervision or persuasion of others) interaction with others, but should have no interaction with the public.

(Tr. 16). Additionally, Kumar is unable to perform any of her past relevant work (Tr. 21). Fifth and finally, considering Kumar's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform (Tr. 22).

Kumar appealed the ALJ's decision (Tr. 6). The Appeals Council declined review (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Hanor appealed to this Court (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal

standards in reaching her conclusion. See Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

### B. Finding Nos. 3 and 4

Kumar claims that the ALJ committed error by not considering all of the records and opinions and by not fully evaluating whether her condition meets Medical Listing 1.04A (DN 16-1, at pp. 6-8). The Commissioner contends that Kumar's cursory argument that she meets Listing 1.04A should be deemed waived because she offered no development or explanation (DN 21, at p. 9). Alternatively, the Commissioner argues that Kumar's normal physical examination findings prevent her from meeting Listing 1.04A.

A claimant must meet *all* of the specified medical criteria of a listing in order to show that her impairment matches the listing. Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis added). "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment." Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003) (citing Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986)). Listing 1.04 covers "Disorders of the spine (e.g., herniated nucleus pulpsus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in *compromise of a nerve root . . . or the spinal cord.*" 20 C.F.R. Pt. 404, Subpt P, App. 1, Listing 1.04 (emphasis added). Additionally, to satisfy Listing 1.04A, a claimant must prove:

> A. Evidence of nerve root compression characterized by nuero-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakened or

>muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting back or supine).

Id.

Here, at Finding No. 4, the ALJ explained that he "specifically considered section 1.04 of the Listings," but Kumar does not meet the requirements in that she does not have "evidence of nerve root compression in a nuero-anatomic distribution with motor, sensory or reflex loss . . ." (Tr. 13). Kumar's argument that she meets Listing 1.04A is perfunctory. She simply repeats the Listing requirements and includes a string citation to the record. After reviewing the portions of the record that Kumar cites to, it is evident that she cannot meet all of the elements of Listing 1.04A.

The records that Kumar cites to are treatment notes from the McAuley Clinic on August 1, 2012, November 1, 2012, and July 31, 2013.[1] These records note Kumar's subjective back pain and contain objective findings of tenderness in her lumbar back (Tr. 530, 534, 536-37, 763, 764, 774, 885). The notes from November 1, 2012, indicate that Kumar started using a walker because her feet and legs were giving out on her and noted that she exhibited decreased range of motion and tenderness in her cervical back (Tr. 772, 774). The most recent records Kumar cites to, from July 31, 2013, diagnose her with degenerative disc disease, however, the objective findings indicate normal cervical back, normal thoracic back, and tenderness in the lumbar back (Tr. 1223). As such, these records do not demonstrate compromise of a nerve root or the spinal cord. The ALJ's determination that Kumar cannot meet the requirements of Listing 1.04A is supported by substantial evidence in the record.

---

[1] Of note, the records Kumar cites to at Tr. 537 and Tr. 765 are copies of the same record, as are the records cited at Tr. 774 and Tr. 885.

Kumar also argues that the ALJ failed to recognize her peripheral neuropathy and sleep apnea (Id. at p. 7). As for the peripheral neuropathy, Kumar states that although the ALJ listed it as a severe impairment, he did not properly address her prescription for Neurontin (DN 16-1, at p. 7). As for the sleep apnea, Kumar believes the ALJ should have recognized it as a severe impairment (Id.). The undersigned finds both of these claims are meritless.

The ALJ, at Finding No. 5, discussed Kumar's peripheral neuropathy, noting that in August of 2012 an examination revealed loss of touch to her bilateral feet (Tr. 17). Additionally, the ALJ considered that at the end of 2012 Kumar presented to the emergency room complaining of numbness from her waist down, but doctors found she was in no acute distress and observed her standing and fixing her bedsheets, which was inconsistent with her complaints (Tr. 18). The undersigned finds the ALJ sufficiently considered effects of Kumar's peripheral neuropathy in relation to her diabetes, and, thus, his finding of non-severity is supported by substantial evidence.

At Finding No. 3, the ALJ noted that Kumar underwent a sleep study and was diagnosed with severe obstructive sleep apnea. The ALJ concluded that because she was placed on CPAP therapy, and there is no indication in the record that it was not effective, the condition is nonsevere (Tr. 13). Mere diagnosis of a condition says nothing about the severity of a condition. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Since the objective medical evidence fails to prove that Kumar needs additional limitations based on her sleep apnea, the ALJ's determination is supported by substantial evidence.[2]

---

2 Kumar also argues that the ALJ improperly applied Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Cir. 1990) in finding that the prior Administrative Law Judge's RFC determination should apply (DN 16-1, at p. 7). Yet the ALJ explicitly found that the prior RFC need not be adopted because new and material evidence exists that warrants a departure from the previous Administrative Law Judge's finding (Tr. 17). It is, therefore, unnecessary to address this argument.

### C. Finding No. 5

#### 1. Mary Danhauer's Opinion

Kumar argues that the ALJ failed to give appropriate weight to the opinion of Mary Danhauer, her treating nurse practitioner (DN 16-1, at p. 3). Kumar explains that Nurse Danhauer's opinion is objectively confirmed by MRIs and x-rays (Id.). As such, Kumar believes the ALJ should have limited her to less than sedentary work, as supported by Nurse Danhauer's opinion (Id. at p. 4). The Commissioner counters that the ALJ reasonably determined that Nurse Danhauer's opinion merited little weight (DN 21, at pp. 5-6).

The regulations define "acceptable medical source" at 20 C.F.R. § 404.1513(a) by listing the categories of medical sources that qualify. It is well-established that APRNs are not "acceptable medical sources." See Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007); Meredith v. Colvin, No. 3:14cv416, 2015 WL 2137202, at *17 (N.D. Ohio May 7, 2015). Rather, APRNs are considered "other sources" pursuant to 20 C.F.R. § 416.913(d)(1), and their opinions are neither entitled to controlling weight nor subject to the "good reasons" requirement of the treating physician rule. See Social Security Ruling 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); Borden v. Comm'r of Soc. Sec., No. 1:13CV2211, 2014 WL 7335176, at *9 (N.D. Ohio Dec. 19, 2014). Nonetheless, an Administrative Law Judge may apply the factors from 20 C.F.R. § 404.1527(c) to opinion evidence from "other sources." SSR 06-03p at *4-5.

Here, the ALJ correctly noted that Nurse Danhauer is not an "acceptable medical source" (Tr. 20). The ALJ identified several reasons for affording little weight to Nurse Danhauer's opinion, most notably that it was highly inconsistent with the objective findings in the record (Id.). The ALJ also noted that the opinion "appears to be based primarily if not exclusively on [Kumar's] subjective complaints," that there is no evidence that Nurse Danhauer has any experience in

7

making functional assessments, and that the statement appears to have been rendered exclusively for compensation rather than treatment purposes (Id.).

After reviewing the record, the undersigned agrees that Nurse Danhauer's highly restrictive opinion is not consistent with the record. For instance, in June of 2012, Nurse Danhauer reviewed an MRI of Kumar's lumbar spine, finding "moderate degenerative disc disease at L4-5 and L5-S1" (Tr. 914-15). Four months later, Dr. Gregory Padgett also reviewed an MRI of Kumar's lumbar spine (Tr. 847). Although he found that Kumar had a "midline posterior subligamentous L5-S1 disc protrusion" and "diffuse disc bulging with a small left paracentral annular tear at L4-5," his impression indicated "stable L4-5 and L5-S1 disc degenerative changes" (Id.). Additionally, in August of 2012, a musculoskeletal exam revealed Kumar could move all extremities without pain and she had no pitting edema in her lower extremities (Tr. 639).

In November of 2012, Nurse Danhauer noted that Kumar was positive for back pain and that Kumar states her feet and legs give way at times (Tr. 883). On physical exam, Nurse Danhauer noted tenderness in Kumar's cervical, thoracic, and lumbar back and "loss of light touch" to below the knee of the right leg and on the bottom of her left foot (Tr. 885-86). Yet other records from this same period reveal otherwise. Specifically, In November of 2012, Dr. William Harrison found negative thoracic spine exam (Tr. 850), and Dr. Okan Suzer noted "unremarkable cervical spine exam" with alignment intact (Tr. 853). Results from examinations of Kumar's knees also revealed no significant degenerative changes (Tr. 856, 859).

Kumar presented to the emergency room in December of 2012 with complaints of numbness and pain from the waist down (Tr. 966). However, Dr. James Coomes noted that Kumar presented "with a very contradictory history" and upon examination found she suffered from back pain and exhibits edema but had a normal range of motion (Tr. 971-71).

Further, many of Nurse Danhauer's answers to counsel's questions indicate she based her opinion on Kumar's subjective complaints. Of note, Nurse Danhauer answered that Kumar stated she did physical therapy but it didn't help much and "she said she was given a cane and that didn't keep her upright so she started using a walker and that's helped" (Tr. 1037). Because the ALJ considered the supportability and consistency of Nurse Danhauer's opinion, along with her specialization, the undersigned finds the ALJ's determination that her opinion is entitled to little weight is supported by substantial evidence in the record.

## 2. Dr. Mukherjee's Opinion

Kumar also alleges the ALJ erred in adopting the "snapshot opinion" of the non-examining state agency physician, Dr. Sudhideb Mukherjee (DN 16-1, at p. 5). Specifically, Kumar contends that Dr. Mukherjee's opinion in no way considers actual observation or examination, and the ALJ failed to give any explanation as to how this opinion was supported by substantial evidence in the record (Id.). In opposition, the Commissioner argues that the ALJ spent multiple pages discussing the record evidence and demonstrating how this evidence supported Kumar's ability to perform a reduced range of light work (DN 21, at pp. 8-9).

The regulations provide that "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Generally, a non-examining physician's report is entitled to less weight than the reports of other physicians who examined the claimant. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a non-examining source has not reviewed a significant portion of the record, and the Administrative Law Judge fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the decision cannot stand. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409

(6th Cir. 2009). But when the opinions of non-examining State agency medical/psychological advisors are consistent with the record, those opinions represent substantial evidence to support the Administrative Law Judge's decision. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3; Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989).

Here, the ALJ gave "significant weight" to Dr. Mukherjee's opinion (Tr. 21). The ALJ explained that Dr. Mukherjee opined that Kumar can do light work with limitations, and the opinion was highly consistent with the record as a whole (Tr. 21). The ALJ also noted that the opinion "is uncontradicted by any medically acceptable treating or examining sources" (Id.).

Kumar states that there is evidence post-dating Dr. Mukherjee's opinion from January 15, 2013, which was not considered (DN 16-1, at p. 5). Exhibits B12F through B23F were all rendered in 2013. Because there are almost 400 pages of records in these exhibits, it is fair to conclude that Dr. Mukherjee did not review a significant portion of the record. Nevertheless, the ALJ considered Kumar's treatment records from 2013 in great detail before assigning weight to the record opinions (Tr. 18-20). The ALJ identified that although Kumar continued to suffer from tenderness in her spine, there were consistent findings of normal musculoskeletal range of motion and no edema (Tr. 19).

Further, the ALJ appropriately gave "significant weight" to Dr. Mukherjee's opinion because it was consistent with the record. In his assessment, Dr. Mukherjee considered Kumar's daily activities, limitations, and medications. Of note, Dr. Mukherjee discussed Kumar's MRI results (Tr. 109, 111), taking into account findings of moderate degenerative disc disease (Tr. 109). The unconsidered evidence from 2013 falls short of demonstrating that there is a reasonable probability that the state agency physician would have reached a different disposition if presented

with the evidence. Because Dr. Mukherjee's opinion was consistent with the record, and the ALJ considered this fact before assigning it greater weight than Nurse Danhauer's opinion, the undersigned finds the ALJ's determination is supported by substantial evidence.

### 3. Kumar's Credibility

Kumar argues the ALJ erred in finding her testimony was not fully credible and failed to state sufficient reasons for doing so (DN 16-1, at p. 9). Specifically, Kumar calls attention to the ALJ's repeated references to her use of a walker (Id.). The Commissioner responds that the ALJ properly discounted Kumar's credibility because of the inconsistencies between her complaints of pain and the objective treatment records (DN 21, at pp. 13-14).

When the Administrative Law Judge evaluates credibility, a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 530 (6th Cir. 1997); Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. Walters, 127 F.3d at 530; Duncan, 801 F.2d at 854. In making his evaluation, the Administrative Law Judge considers objective medical evidence, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

In determining whether a claimant suffers from debilitating pain and other symptoms, the Sixth Circuit applies the two-part test set forth in Duncan, 801 F.2d at 853. First the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. Duncan, 801 F.2d at 853. Here, the ALJ concluded that Kumar's

medically determinable impairments could reasonably be expected to cause her symptoms (Tr. 17). Next, the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical opinion is of such severity that it can reasonably be expected to produce the alleged disabling pain." Duncan, 801 F.2d at 853. Here, the ALJ found that Kumar's allegations concerning the intensity, persistence, and limiting effects of her symptoms are not consistent with the evidence as a whole and "are not persuasive or credible to the extent they are inconsistent with the RFC finding" (Tr. 17).

The ALJ mainly discounted Kumar's credibility because of the inconsistencies between her statements and the objective treatment records (Tr. 19). At the beginning of his RFC assessment, the ALJ described Kumar's complaints of pain, noting her "very aching sharp pain all of the time" and her pain has not been relieved with treatment (Tr. 16-17). He discussed Kumar's allegations of "uncontrolled diabetes" and back pain, which she believes prevents her from sitting more than 15 minutes at a time or sitting for two hours total in a day and standing for only five-six minutes with a walker and fifteen minutes without a walker (Tr. 17). After describing Kumar's complaints, the ALJ thoroughly reviewed the treatment records from June of 2012 to October of 2013 (Tr. 17-20). In doing so, the ALJ discussed "overtly normal" findings from multiple examinations (Tr. 18-19) and inconsistent observations regarding Kumar's range of motion, edema, and distress (Id.).

The ALJ additionally considered Kumar's hearing testimony about her activities of daily living (Tr. 20). Kumar indicated at the hearing that she spends most of the day in bed due to her pain. Yet the ALJ explains her daily activities are not corroborated by treatment records, which demonstrate little difficulty with ambulation, decreased range of motion some of the time, and

tenderness to palpation occasionally (Id.). The ALJ comprehensively evaluated the objective evidence and, thus, his credibility determination as to Kumar is supported by substantial evidence in the record.

### 4. Lay Witness Testimony

In addition, Kumar claims the ALJ failed to assign weight to the testimony of several lay witnesses "who have a high level of familiarity with her activities and limitations (DN 16-1, at p. 10). The Commissioner disagrees, explaining that the ALJ reasonably weighed the third-party lay testimony and found it had "potential bias" and was inconsistent with opinion evidence observed by physicians (DN 21, at pp. 15-16).

SSR 06-03p instructs that in evaluating evidence from lay witnesses, "it is appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). When lay witness testimony is provided, an Administrative Law Judge cannot disregard it without comment but, rather, must "give reasons for not crediting the testimony that [is] germane to each witness." Maloney v. Comm'r of Soc. Sec., 480 F. App'x 804, 810 (6th Cir. 2012). Yet when an Administrative Law Judge discusses at length the objective medical evidence, he is not required to give a separate review of a third party statement. See Pasco v. Comm'r of Soc. Sec., 137 F. App'x 828, 842 (6th Cir. 2005) (finding the ALJ did not err in failing to mention letter from claimant's mother).

Here, the ALJ explicitly discussed the function reports submitted by Kumar's cousin and husband (Tr. 21). The ALJ explained that they could not be considered disinterested third parties and, more importantly, the reports are not consistent with the preponderance of the opinions, examinations, and observations of the doctors in the case (Id.). As such, the ALJ concluded that

he could not afford these reports significant weight (Id.). Because the ALJ followed SSR 06-03p in determining the reports of Kumar's ex-husband and cousin should not receive significant weight, his finding is supported by substantial evidence.

### 5. Improper Speculation as to Medical Conclusions

Kumar makes two claims that the ALJ engaged in improper speculation as to medical conclusions. First, Kumar claims the ALJ speculated in affording significant weight to Dr. Mukherjee's opinion. The undersigned has thoroughly evaluated this argument in the preceding sections and found it is without merit. Second, Kumar claims the ALJ acted "as his own medical expert" in stating that the record is "highly inconsistent with the need for a walker" (DN 16-1, at p. 8). The Commissioner argues that the ALJ reasonably evaluated the medical evidence (DN 21, at pp. 12-13).

The Administrative Law Judge is not bound to accept the opinion or theory of any medical expert, "but may weigh the evidence and draw his own inferences." McCain v. Dir., Office of Workers Compensation Programs, 58 F. App'x 184, 193 (6th Cir. 2003) (citation omitted). Even so, the Administrative Law Judge is not permitted to "substitute his own medical judgment for that of the treating physician," Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009) (citing Meece v. Barnhart, 192 F. App'x 456, 465 (6th Cir. 2006)), and may not make his own independent medical findings. Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted).

It was appropriate for the ALJ to consider Kumar's use of a walker. Nurse Danhauer's records demonstrate that she did not prescribe the walker to Kumar but that the walker helped prevent her from falling (Tr. 772). During physical therapy, Kumar was advised to use a walker, but indicated she did not like it due to its lack of brakes (Tr. 707-08). The ALJ indicated that

Kumar's frequent normal musculoskeletal and neurological findings "are highly inconsistent with a medical need for a walker" (Tr. 19). The ALJ did not act as his own medical expert in making this statement but, instead, resolved inconsistencies in the evidence. See Riley v. National Mines Corp., 852 F.2d 197, 198 (6th Cir. 1988) (per curium) (citing Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir. 1985)). Accordingly, the ALJ did not engage in improper speculation.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.


Copies:	Counsel